```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
                                    *
NEIL PARROTT, et al.,               *
                                    *
     Plaintiffs,                    *
                                    *
v.                                  *   Civil Action No. GLR-15-1849
                                    *
LINDA H. LAMONE, et al.,            *
                                    *
     Defendants.                    *
                                    *
```

Robert D. Popper, Chris Fedeli, and Lauren M Burke, JUDICIAL WATCH, INC., Washington, D.C., for Plaintiffs.

Julia Doyle Bernhardt and Jeffrey Lewis Darsie, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Defendants.

Filed: August 24, 2016

Before Niemeyer, Circuit Judge, and Bredar and Russell, District Judges:

## OPINION OF THE THREE-JUDGE COURT

Judge Russell wrote the opinion in which the Court concluded it does not have subject-matter jurisdiction over this action because Plaintiffs do not have standing to pursue their claims.

RUSSELL, District Judge:

Plaintiffs ("Voters")[1] challenge the constitutionality of Maryland's 2011 congressional redistricting law under Article I, § 2 of the United States Constitution and the Due Process Clause of the Fifth and Fourteenth Amendments. Pending before the Court

---

[1] Voters consist of one voter from each of Maryland's eight congressional districts. They include: Neil Parrott, Ann Marvin, Lucille Stefanski, Eric Knowles, Faith Loudon, Matt Morgan, Ellen Sauerbrey, and Kerinne August.

is Defendants', Linda H. Lamone, in her official capacity as the State Administrator of Elections, and David J. McManus, Jr., in his official capacity as Chairman of the Maryland State Board of Elections (collectively, the "State"), Motion to Dismiss (ECF No. 7). The Motion is ripe for disposition. For the reasons outlined below, the Court will grant the Motion.

I

In October 2011, following the 2010 decennial census, the Maryland General Assembly enacted a congressional redistricting plan (the "Plan"), establishing the districts to be used for the election of Maryland's eight representatives in the United States House of Representatives. See Md.Code Ann., Elec. Law §§ 8-701 et seq. (West 2016). Following its enactment, the Plan has been subject to numerous challenges.[2] On June 24, 2015, Voters brought the instant challenge, arguing the Plan is an unconstitutional political gerrymander[3] that transfers the power to select

---

[2] See, e.g., Benisek v. Mack, 11 F.Supp.3d 516 (D.Md.), aff'd, 584 F.App'x 140 (4th Cir. 2014), cert. granted sub nom. Shapiro v. Mack, 135 S.Ct. 2805 (2015), and rev'd and remanded sub nom. Shapiro v. McManus, 136 S.Ct. 450 (2015); Olson v. O'Malley, No. WDQ-12-0240, 2012 WL 764421 (D.Md. Mar. 6, 2012); Gorrell v. O'Malley, No. WDQ-11-2975, 2012 WL 226919 (D.Md. Jan. 19, 2012); Fletcher v. Lamone, 831 F.Supp.2d 887 (D.Md. 2011), aff'd, 133 S.Ct. 29 (2012).

[3] "The term 'political gerrymander' has been defined as 'the practice of dividing a geographical area into electoral districts, often of highly irregular shape, to give one political party an unfair advantage by diluting the opposition's voting

representatives from the people -- all Maryland voters -- to the Maryland General Assembly.  (ECF No. 1).

On July 20, 2015, the State filed a Motion to Dismiss under Federal Rules of Civil Procedure 8(c), 12(b)(1), and 12(b)(6).  (ECF No. 7).  Voters submitted an Opposition on September 21, 2015 (ECF No. 13), and the State filed a Reply on October 21, 2015 (ECF No. 17).  In accordance with Shapiro v. McManus, 136 S.Ct. 450 (2015) and 28 U.S.C. § 2284 (2012), the Chief Judge of the United States Court of Appeals for the Fourth Circuit designated a three-judge court to hear the State's Motion to Dismiss.  (ECF Nos. 21, 22).  The three-judge court conducted a hearing on July 12, 2016.  (ECF No. 29).

II

A

The State advances two principal arguments for why the Court should dismiss Voters' claims.  First, Voters lack standing because they allege a generalized grievance on behalf of all Maryland voters.  Second, Voters fail to state a claim upon which relief can be granted because their claims are not justiciable.  The Court begins by reviewing the threshold issue of standing.

---

strength.'"  Vieth v. Jubelirer, 541 U.S. 267, 271 n.1 (2004) (quoting Black's Law Dictionary 696 (7th ed. 1999)).

Motions to dismiss for lack of standing are governed by Rule 12(b)(1), which pertains to subject matter jurisdiction. See CGM, LLC v. BellSouth Telecomm's, Inc., 664 F.3d 46, 52 (4th Cir. 2011). A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)).

Here, because the State raises a facial challenge, the Court will afford Voters "the same procedural protection as [they] would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court will take the facts in Voters' Complaint as true and deny the State's Rule 12(b)(1) Motion to Dismiss if the Complaint alleges sufficient facts to invoke subject matter jurisdiction. Id.

B

Article III of the United States Constitution limits the judicial authority of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; Spokeo, Inc.

4

v. Robins, 136 S.Ct. 1540, 1547 (2016), as revised (May 24, 2016). Thus, the threshold question in every federal case is whether the court has authority under Article III to entertain the suit. Warth v. Seldin, 422 U.S. 490, 498 (1975). Courts apply the standing doctrine to resolve this question. Bishop v. Bartlett, 575 F.3d 419, 423 (4th Cir. 2009).

The party invoking federal jurisdiction bears the burden of establishing standing. Id. at 424 (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [a court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." Id. (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). The Court must dismiss an action when the party invoking federal jurisdiction does not include the necessary allegations in the pleading. Id. (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).

The standing doctrine comprises constitutional and prudential components. Id. at 423 (citing Allen v. Wright, 468 U.S. 737, 751 (1984)). To satisfy the constitutional component, a party must have suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant and likely

5

to be redressed by a favorable judicial decision. Robins, 136 S.Ct. at 1547 (citing Lujan, 504 U.S. at 560-61). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560). A "particularized" injury is an injury that affects the plaintiff "in a personal and individual way." Id. (quoting Lujan, 504 U.S. at 560 n.1). A "concrete" injury is one that is not abstract and actually exists. Id. To be concrete for purposes of standing, an injury need not be tangible. Id. at 1549.

As for the prudential component of standing, courts generally recognize three circumstances under which a party does not have standing: (1) when the party asserts a harm that "is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens," Bishop, 575 F.3d at 423 (quoting Warth, 422 U.S. at 499); (2) when the party "rest[s] his claim to relief on the legal rights or interests of third parties," id. (quoting Warth, 422 U.S. at 499); and (3) when the party's grievance does not "arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit," id. (quoting Bennett v. Spear, 520 U.S. 154, 162 (1997)).

That an injury is widely shared does not necessarily mean that the injury is a "generalized grievance" precluding standing. A widely shared injury can be an injury in fact, but only if the injury is concrete. Id. at 424-25 (quoting FEC v. Akins, 524 U.S. 11, 24 (1998)). The deprivation of the right to vote is a concrete injury that can constitute an injury in fact notwithstanding that the injury is widespread. Id. (citing Akins, 524 U.S. at 24). Examples of widely shared abstract injuries that do not confer standing include injuries to the "common concern for obedience to the law," Akins, 524 U.S. at 23 (quoting L. Singer & Sons v. Union Pac. R. Co., 311 U.S. 295, 303 (1940)), and injuries to "the public's interest in the administration of the law," id. at 24 (quoting Perkins v. Lukens Steel Co., 310 U.S. 113, 125 (1940)).

Throughout their Complaint, Voters consistently allege they are asserting a harm that all Maryland voters endure. (See Compl. ¶ 31, ECF No. 1) (alleging Voters "are suing as Maryland voters for injuries . . . that all Maryland voters endure because of the egregious gerrymandering of the State's congressional districts"); (id. ¶ 35) ("Maryland's gerrymander harms all Maryland voters, regardless of their party preferences or how they would vote in a particular election[.]"); (id. ¶ 36) ("Maryland's gerrymander inflicts particular, intentional harm on

7

partisan and non-partisan voters of every description[.]"). Voters, however, do not allege that the Plan has deprived all Maryland voters of their right to vote in congressional elections. Instead, Voters assert that the Plan harms all Maryland voters because it mechanically manipulates Maryland's congressional districts in a manner that transfers the power to select representatives from the people to the Maryland General Assembly. While this alleged harm is not as concrete as the deprivation of the right to vote, the Court concludes that at this pleading stage, this harm is adequately concrete and particularized.

To sufficiently allege standing, however, Voters must assert more than a concrete and particularized injury -- they must also allege "an invasion of a legally protected interest." Robins, 136 S.Ct. at 1548 (quoting Lujan, 504 U.S. at 560). Voters do not cite any cases, and the Court's exhaustive search reveals none, in which a court expressly held that the Constitution protects the right to reside in a district that has not been mechanically manipulated to transfer the power to select representatives away from the people.

Voters have not alleged the Plan created districts of unequal population. Nevertheless, they rely on Baker v. Carr, 369 U.S. 186 (1962), Wesberry v. Sanders, 376 U.S. 1 (1964), and

8

Reynolds v. Sims, 377 U.S. 533 (1964) (the "One Person, One Vote Cases"), arguing they stand for more than the proposition that congressional districts within a state must have equal populations. Voters assert that "properly understood, [the One Person, One Vote Cases] stand for the principle that legislators and their agents may not manipulate districts to arrogate to themselves the power reserved to the people of choosing their legislators." (Pls.' Opp'n Mot. Dismiss ["Opp'n"] at 12, ECF No. 13). Voters further contend that these cases "should be understood as a set of practical constitutional limitations on legislators' ability to entrench themselves in power notwithstanding the wishes of voters." (Opp'n at 15).

In Baker, the United States Supreme Court held that allegations of disparities of population in state legislative districts raise justiciable claims. 369 U.S. at 206, 237. Two years later, in Wesberry, the Court applied Baker to strike down Georgia's congressional district plan because it created districts comprising vastly disparate populations. 376 U.S. at 5, 18. The Court held that the constitutional requirement that representatives be chosen "by the People of the several States," U.S. Const. art. I, § 2, "means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's." Wesberry, 376 U.S. at 7-8. The Court explained

9

that the Constitution's "plain objective" is to make "equal representation for equal numbers of people the fundamental goal for the House of Representatives." Id. at 18.

That same year, in Reynolds, the Court applied Baker to state legislative districts, invalidating Alabama's malapportioned House and Senate districts. See Reynolds, 377 U.S. at 577 (1964). The Court held that "as a federal constitutional requisite both houses of a state legislature must be apportioned on a population basis," meaning that states must "make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable." Id.

The plaintiffs' claims in the One Person, One Vote Cases all centered on the population disparities in legislative districts. See Baker, 369 U.S. at 192-93; Wesberry, 376 U.S. at 2-3; Reynolds, 377 U.S. at 540. That fact alone militates against reading those cases as establishing that the Constitution protects the right to reside in districts that have not been mechanically manipulated. What is more, nothing in the language of the One Person, One Vote Cases suggests that the Court should apply those cases to claims not asserting unequal population. As such, the Court rejects Voters' reading of the One Person, One Vote Cases, finding it untenable.

10

In sum, Voters fail to identify a constitutional provision or case that establishes a right to reside in a district that has not been mechanically manipulated in a manner that transfers the power to elect representatives away from the people. Thus, the Court concludes that Voters have not sufficiently alleged standing to assert their claims because have they have not alleged an invasion of a legally protected interest.[4] Accordingly, the Court will grant the State's Motion to Dismiss for lack of subject matter jurisdiction.

### III

For the foregoing reasons, the State's Motion to Dismiss (ECF No. 7) is GRANTED. Voters' Complaint (ECF No. 1) is DISMISSED, and the Court will direct the Clerk to CLOSE this case. A separate Order follows.

Entered this 24th day of August, 2016

/s/
_____
George L. Russell, III
United States District Judge

---

[4] Because the Court concludes that Voters do not have standing, the Court need not determine whether Voters state claims upon which relief may be granted.